UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HELEN MAXINE JEWELL, *Plaintiff*, | ) ) ) | |
| vs. | ) ) ) | 1:11-cv-1145-JMS-TAB |
| THE KROGER COMPANY, *Defendant*. | ) ) ) | |

**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION**

This is a slip and fall case brought by Plaintiff Helen Jewell against Defendant The Kroger Company ("Kroger").  Ms. Jewell fell while shopping in the Kroger meat department and fractured her hip.  Kroger has moved for summary judgment.

**I.
SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor.  *See* Fed. R. Civ. Pro. 56.  To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial.  Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. Pro. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible

evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id*. at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## II.
### EVIDENTIARY OBJECTIONS

In its reply brief, Kroger moves to strike various portions of the evidence that Ms. Jewell designated in response to Kroger's summary judgment motion. The Court will address Kroger's objections before proceeding to the merits of the case.

**A. Ms. Jewell's Affidavit**

Kroger moves to strike three portions of the affidavit that Ms. Jewell submitted in response to Kroger's motion for summary judgment. The Court will address each portion in turn.

*1. References to Brian Lee Montgomery's Observations*

Kroger moves to strike the second sentence of the third paragraph as well as the fourth paragraph of Ms. Jewell's affidavit because those portions of the affidavit convey the observations and conclusions of Brian Lee Montgomery—Ms. Jewell's ex-grandson-in-law who visited the Kroger store after Ms. Jewell's fall and observed a Kroger employee mopping water off the floor in the meat department. Specifically, the challenged portions of Ms. Jewell's affidavit convey Ms. Jewell and Mr. Montgomery's mutual conclusion that the meat case in front of where Ms. Jewell fell was the same area where Mr. Montgomery saw Kroger employees mopping the floor later that day. Kroger argues that although Ms. Jewell may relate her own conclusions following the post-accident visit, Mr. Montgomery's conclusions are inadmissible hearsay in Ms. Jewell's affidavit.

The Court agrees with Kroger that Ms. Jewell cannot testify to Mr. Montgomery's conclusions because it is hearsay for her to use them to prove the truth of the matter asserted—specifically, that after Ms. Jewell fell, Mr. Montgomery saw a Kroger employee mopping water

from the floor in the area where Ms. Jewell fell. Therefore, to the extent that the challenged portions of Ms. Jewell's affidavit convey Mr. Montgomery's conclusions, those portions of the affidavit are stricken. The effect of striking those portions of Ms. Jewell's affidavit is minimal, however, because Ms. Jewell also designated an affidavit from Mr. Montgomery containing the challenged conclusions, [dkt. 27 at 4], and Mr. Montgomery's statements about his own observations and conclusions are not hearsay.

## 2. *Statement to Medical Professionals*

Ms. Jewell attaches four pages from unauthenticated medical records to her affidavit and relies on those records for her statement in paragraph 6 that she "stated to emergency room personnel that [she] had slipped on moisture." [Dkt. 27 at 5 ¶ 6.] Kroger objects to Ms. Jewell's statement regarding what she told the hospital about her fall, arguing that it is hearsay based on unauthenticated medical records and that her statement mischaracterizes the records.[1]

According to the medical records, Ms. Jewell told medical personnel that she "fell at Kroger and struck her hip on a cooler" and that she "thinks that there was moisture on the floor." [Dkt. 27 at 6.] The Court agrees with Kroger that the challenged portion of Ms. Jewell's affidavit makes her statement to the medical personnel about moisture on the floor sound unequivocal; however, the statement in the medical record is actually less certain about Ms. Jewell's belief that she "thinks" that moisture was present.

Kroger is correct that unauthenticated medical records are generally inadmissible. *Briggs v. Marshall*, 93 F.3d 355, 362 (7th Cir. 1996). It is possible, however, that Ms. Jewell's statement about the cause of her symptoms (her belief that she might have slipped on moisture)

---

[1] Kroger also argues that Ms. Jewell's statements are inconsistent with her deposition testimony and should be stricken on that basis. [Dkt. 32 at 9.] However, because the statement at issue was made well before Ms. Jewell's deposition, the Court will not address that argument further.

may be admissible pursuant to Federal Rule of Evidence 803(4) as a statement made for medical diagnosis or treatment.  Rule 803(4) allows statements of that nature to be introduced because a patient's self-interest in promoting the cure of her own medical ailments bolsters the reliability of statements the patient makes for purposes of diagnosis or treatment.  *Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir. 1990).  The test for determining whether a statement is admissible under this rule is "whether such statements are of the type reasonably pertinent to a physician in providing treatment."  *Id.*  Each case must be examined on its own facts, and in making such a judgment much will depend on the treating physician's own analysis.  *Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir. 1986).

Although the Court has doubts that the statement at issue is of the type reasonably pertinent to a physician making a diagnosis, it is possible that a physician's diagnosis could change depending on whether the patient believed moisture was or was not present when she slipped.  In other words, if moisture was not present, the physician may look for physical causes such as problems with the patient's balance or motor skills.  Therefore, making all possible inferences in favor of Ms. Jewell as the Court is required to do at this stage of the proceedings, the Court denies Kroger's request to strike Ms. Jewell's statement regarding the observation she made at the hospital.

### 3.  High Sheen on the Floor

Kroger moves to strike Paragraph 7 of Ms. Jewell's affidavit stating that on the day of her fall, "the floor of the Kroger store was highly polished, therefore it was hard to observe whether there was water on the floor because of the high sheen on the floor."  [Dkt. 27 at 5 ¶ 7.]  Kroger argues that this statement contradicts Ms. Jewell's prior deposition testimony that she never

looked at the floor and, therefore, did not see anything on the floor. [Dkt. 32 at 10 (referencing dkt. 20-2 at 15).]

The circumstance of changes in witness testimony following the filing of a summary judgment motion has been addressed by the Seventh Circuit:

> When a witness abandons her testimony in the face of a pending summary judgment motion, the change is often a transparent ruse designed to prolong the case; allowing the ruse to succeed would defeat summary judgment's purpose of weeding out clearly unmeritorious cases. But while a change in testimony is often a clear ruse, it is sometimes plausible. A number of scenarios might explain a change: a confusing deposition question, circumstances indicating a lapse of memory, or ambiguous or incomplete earlier testimony. Consequently a court must examine the particular circumstances of a change in testimony to see whether it is plainly incredible or merely creates a credibility issue for the jury.

*Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 488 (7th Cir. 2007) (citations omitted). Further, unless the reason for a person's turnabout in testimony is apparent from other evidence of record, the change in testimony needs to be explained. *Id*. at 488 n.6; *Beckel v. Wal-Mart Associates, Inc*., 301 F.3d 621, 623 (7th Cir. 2002).

The Court agrees with Kroger that Ms. Jewell's affidavit that the floor was highly polished directly contradicts her deposition testimony, which she repeated numerous times, that she did not look at the floor in the store. [Dkt. 20-2 at 15.] Because Ms. Jewell does not provide an explanation for this changed testimony and no explanation is apparent from other evidence of record, the Court strikes Paragraph 7 from Ms. Jewell's affidavit.

### B. Mr. Montgomery's Affidavit

Kroger also moves to strike various portions of Mr. Montgomery's affidavit. To the extent these objections relate to grounds covered above, the Court incorporates the previously stated rationale and will only briefly address the arguments.

*1. Ms. Jewell's Observations*

Kroger argues that the portions of Mr. Montgomery's affidavit incorporating Ms. Jewell's observations and conclusions from a post-fall visit to the store should be stricken as hearsay. For the reasons provided above in Part II.A.1, the Court grants Kroger's motion. Mr. Montgomery's statements regarding his own observations and conclusions are not hearsay, however, and can be considered.

*2. Inconsistencies with Prior Deposition Testimony*

Kroger argues that Mr. Montgomery's statement that on the day of Ms. Jewell's fall he saw a Kroger employee "mopping up water" contradicts his deposition testimony that on the day in question he "[didn']t know if they put the water there to clean up a mess, I have no—I don't—I have no way of detecting that[,]" and that it was "very well possible" that what he had witnessed was the Kroger employee cleaning up Ms. Jewell's blood with water. [Dkt. 32 at 12 (quoting dkt. 20-6 at 10).]

The Court disagrees with Kroger that Mr. Montgomery's statements about "mopping up water" directly contradict his deposition testimony. Although the Court will not strike that portion of the affidavit, it, of course, must be read in conjunction with the designated evidence regarding the admitted limitations with Mr. Montgomery's observations.

*3. Ambulance*

Kroger moves to strike Paragraph 5 of Mr. Montgomery's affidavit, which states that as he was entering the store on the day of Ms. Jewell's fall he noticed an ambulance in the parking lot and that it was the ambulance that took Ms. Jewell to the hospital. [Dkt. 32 at 12 (referencing dkt. 27 at 11 ¶ 5).] Kroger argues that this representation directly contradicts Mr. Montgomery's

deposition testimony that he did not see any ambulances on the day in question. [Dkt. 20-6 at 13.]

The Court agrees with Kroger that Montgomery's statement that he saw the ambulance at Kroger that took Ms. Jewell to the hospital directly contradicts his deposition testimony that he did not see any ambulances that day. Because Mr. Montgomery does not provide an explanation for this changed testimony and no explanation is apparent from other evidence of record, the Court strikes Paragraph 5 from Mr. Montgomery's affidavit.

### *4. Amount of Water*

Kroger moves to strike Mr. Montgomery's statement that he saw a photo of the "small amount of blood" on the floor after Ms. Jewell fell and that the amount of water he saw the Kroger employee using on the floor "would not have been necessary" to "clean up the small amount of blood." [Dkt. 32 at 13 (referencing dkt. 27 at 12).]

The Court agrees with Kroger that Mr. Montgomery's conclusion is speculative or an opinion. And the Court acknowledges that he admitted in his deposition that he did not know if the Kroger employee he observed was cleaning up the blood or anything else. However, the change in testimony can be explained by Mr. Montgomery's observation of the photo of the amount of blood from Mrs. Jewell's fall. Moreover it is an admissible opinion because it is based on Mr. Montgomery's perception about what he saw (a picture of the blood and the amount of moisture on the floor around the Kroger employee), and helpful to a clear understanding of his testimony. *See* Fed. R. Evidence 701. Kroger's arguments are more appropriately directed at the weight of the evidence, not its admissibility at this stage of the proceedings, and the Court denies its motion to strike Mr. Montgomery's conclusion.

### C.  Ms. Seaborn's Affidavit

Andrea Seaborn is a Kroger customer who was in the store at the time of Ms. Jewell's fall and heard her scream for help.  [Dkt. 27 at 15.]  Kroger moves to strike the second sentence of Paragraph 4 and the entirety of Paragraph 5 from her affidavit, arguing that those portions are irrelevant, self-serving, and inadmissible.  [Dkt. 32 at 14.]

Kroger moves to strike the second sentence of Paragraph 4 in which Ms. Seaborn states that two weeks before Ms. Jewell fell, she saw moisture around the area where Ms. Jewell fell and "Kroger employees had placed cloth towels in front of the fish chest to soak up moisture."  [Dkt. 27 at 15 ¶ 4.]  The Court agrees with Kroger that Ms. Seaborn assumes that Kroger employees placed the towels in front of the fish chest and will not consider that part of the her affidavit.

Kroger also moves to strike Paragraph 5 of Ms. Seaborn's affidavit, which provides that the floor where Ms. Jewell fell was "very highly polished, therefore, it would have been hard to observe whether there was water on the floor because of the high sheen on the floor."  [Dkt. 27 at 16.]  Kroger argues that this statement is contradicted by other evidence, namely the depositions of Ms. Jewell and Mr. Montgomery, and that it is "self-serving."  [Dkt. 32 at 15.]

Kroger's argument that self-serving statements must be stricken if they contradict other evidence in the record fails in this context.  That well-established principal applies when an affidavit contradicts the affiant's own sworn deposition testimony without factual support in the record.  *See Broaddus v. Shields*, 665 F.3d 846, 856 (7th Cir. 2011).  There is no evidence that Ms. Seaborn was deposed, much less that she contradicted her own sworn testimony.  Therefore, the Court denies Kroger's motion to strike Paragraph 5 of Ms. Seaborn's affidavit.

## III.
### BACKGROUND

The following facts are those supported by admissible evidence, and are either undisputed or presented in the light most favorable to Ms. Jewell.

On August 15, 2010, Ms. Jewell went to the Kroger grocery store near her home in Franklin, Indiana to obtain a money order and purchase some sausage for her sister. After Ms. Jewell obtained the money order, she walked directly from the customer service area to the rear of the store to obtain the sausage. While walking next to a meat case, she slipped and fell, fracturing her hip. As she fell to the floor, Ms. Jewell tried to grab the meat case, but she was unsuccessful and scraped her elbow against the outer rail of the case, suffering a small cut. Ms. Jewell had not looked down when she was walking and did not see any moisture, liquid, or other substance on the floor either prior to or after her fall. Nevertheless, Ms. Jewell believes that there must have been some moisture on the floor that caused her to slip, and she told a medical provider at the hospital where she was taken that she "thinks that there was moisture on the floor."

Kroger Unit Manager Barb Reed and customer Suzanne Delabye came to Ms. Jewell's assistance as she lie on the floor following her fall, keeping her stable until an ambulance arrived. As she knelt near Ms. Jewell, Ms. Reed noticed a small amount of blood on the floor next to Ms. Jewell that appeared to have come from a cut or scrape on Ms. Jewell's arm, but Ms. Reed noticed no other substance on the floor. After the ambulance team arrived to provide Ms. Jewell with medical attention and transport her to the hospital, Ms. Reed examined the floor visually and by touch and found no foreign substance in the area of the meat case and no clutter in the area. As part of her investigation, Ms. Reed questioned customer Delabye, who indicated

she had not seen anything on the floor near where Ms. Jewell had fallen. Ms. Reed's investigation included discussions with Kroger employees who had been in the area of the store where Ms. Jewell fell, but none reported observing the presence of any substance on the floor. Ms. Reed also reports that the store had no record of any problems with the meat case next to where Ms. Jewell fell. The floor had not been mopped in that area on that day, as the floors at the store were regularly cleaned and buffed in the evening hours.

No evidence is provided regarding any eyewitness to Ms. Jewell's actual fall, but evidence has been provided by three (3) post-occurrence witnesses—Mr. Montgomery, Ms. Delabye, and Ms. Seaborn. Ms. Seaborn was at the store the day Ms. Jewell fell and called 911 after she heard Ms. Jewell calling for help. She did not see any moisture on the floor near the meat case that day, but opines that it would have been hard to see moisture because of the high sheen of the floor. Ms. Seaborn had seen moisture on the floor near the meat and fish cases at that Kroger store on other shopping visits, both two weeks before and after Ms. Jewell fell.

Mr. Montgomery is a family friend and former grandson-in-law of Ms. Jewell. Mr. Montgomery's fifteen-year-old son had stayed with Ms. Jewell the night prior to her fall at Ms. Jewell's home along with two other of grandchildren. On his way to pick up his son from Ms. Jewell's home, Mr. Montgomery stopped at Kroger. He arrived at Kroger after Ms. Jewell had fallen and did not learn of her fall until after he left the store and proceeded to Ms. Jewell's home. He was immediately informed by his son and the other grandchildren that an ambulance had taken Ms. Jewell to the hospital after she fell at Kroger.

Ms. Jewell sued Kroger in state court in August 2011. [Dkt. 1-4.] Kroger removed this action to federal court on the basis of diversity jurisdiction.[2] [Dkt. 1.] Mr. Montgomery was deposed. At his deposition he testified that while he was in Kroger the day of the fall, he saw Kroger employees cleaning up the floor area in front of a meat case in the back aisle. His deposition testimony, in pertinent part was as follows:

> Q. When you saw – well, what exactly did you see when you saw somebody cleaning up water?
>
> A. Like I said, I was walking down the backstretch, which is the wall here as far as you can go back, and I had come by a case and there was a lady and a gentleman, and there was water on the floor. The lady was on her hands and knees with a sponge I think it was, or a towel. The gentleman was standing behind her, and she was mopping the – cleaning the water up. I don't know if they put the water there to clean up mess, I have no – I don't – I have no way of detecting that.
>
> * * *
>
> Q. So is it fair to say as you sit here today you don't know whether the water that you saw being cleaned up was there at the time that Helen Jewell fell or not, is that fair?
>
> A. Yes, I don't.
>
> Q. And you don't know whether that was water that was being used, or soap and water or some combination of cleaner, to clean up what may have been on the floor either from Helen Jewell falling or from some other spill or something, you don't know?
>
> A. That's correct. Yes.

---

[2] Because this Court is exercising diversity jurisdiction over this matter, it will apply federal procedural law and Indiana substantive law. *Gacek v. Am. Airlines*, 614 F.3d 298, 301-02 (7th Cir. 2010).

## IV.
### DISCUSSION

Kroger argues that Ms. Jewell has failed to raise a genuine issue of material fact regarding either the presence of moisture on the floor or Kroger's actual or constructive knowledge of that condition.

### A. Presence of Moisture

Kroger contends that neither Ms. Jewell nor any of her witnesses saw water or any other foreign substance on the floor before Ms. Jewell fell or immediately following her fall. Ms. Jewell points to Mr. Montgomery's observation of a Kroger employee cleaning the area with a mop at some undetermined point after Ms. Jewell's fall. She argues that this supports an inference that there was moisture present before she fell.

In assessing the liability of a landowner for injuries suffered by an invitee, Indiana follows the Restatement (Second) of Torts (1965):

> § 343. Dangerous Conditions Known to or Discoverable by Possessor
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965).

There is no evidence that anyone observed any moisture before Ms. Jewell fell, indeed Ms. Reed attests that she checked the floor immediately following Ms. Jewell's fall and found it

to be "bone dry."[3] The fact that both Ms. Jewell and Ms. Seaborn saw moisture on the floor in the meat and fish area on occasions prior to and after the date of the fall is not evidence which could support a conclusion that the same condition existed at the time of Ms. Jewell's fall. In fact, assuming that they had the same powers of observation on the date of the accident as they did on those other occasions, the fact that neither Ms. Seaborn nor Ms. Jewell observed any moisture on the floor on the date in question supports and inference that there was no moisture present when Ms. Jewell fell.

On the other hand, Ms. Seaborn states that the floor was very highly polished and that it would have been hard to observe moisture. Ms. Jewell told her medical providers that she believed she has slipped on water, and Mr. Montgomery saw a Kroger employee mopping moisture off the floor on the day in question after Ms. Jewell's fall. In his opinion it was more water than would have been necessary to clean up the small amount of blood present from Mrs. Jewell. Because the Court is required to construe all evidence in favor of the non-movant—Ms. Jewel—the Court concludes that Ms. Jewell has (barely) presented sufficient evidence to create an issue of material fact as to the presence of moisture on the floor.

### B. Notice

Kroger argues that even if an issue of material fact exists regarding the presence of moisture, there is no issue of material fact as to its lack of actual or constructive notice of the presence of a dangerous condition. Ms. Jewell relies on Ms. Seaborn's statements that she had previously observed moisture in the area where Ms. Jewell fell to attempt to create an issue of material fact on this point.

---

[3] In her affidavit, Ms. Reed also states that she was told by other employees during her accident investigation that the floor was dry and free from debris; however, that is hearsay, insofar as Kroger offers it to prove the condition of the floor.

Ms. Seaborn's observation that two weeks before Ms. Jewell fell she saw water present somewhere in the area of the fall is simply too remote to establish knowledge of the presence of moisture on the day Ms. Jewell fell. Similarly, Mr. Montgomery's post-accident observations raise no issue about what, if anything, was present before Ms. Jewell fell, or whether it was present for such a length of time that Kroger should have been aware of it.

The Indiana Court of Appeals has recently defined constructive knowledge as a "condition which has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care." *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012) (citations omitted). Ms. Jewell has introduced no evidence to establish that even if there were moisture present in the area where she fell, it had been there for so long and under such circumstances that Kroger should have discovered it.

The mere fact that someone slipped and fell on another's property does not allow an inference of negligence. *Scott County Family YMCA, Inc. v. Hobbs,* 817 N.E.2d 603, 604 (Ind. Ct. App. 2004). In *Scott County Family YMCA*, a patron of the YMCA slipped and fell near a shower stall and sued to recover for his injuries. *Id.* at 603. The YMCA moved for summary judgment, submitting the plaintiff's deposition testimony stating that he saw no foreign substance on, or defects in, the floor. It also submitted the affidavit of an employee who stated that she had examined the floor following the patron's fall and found no problem with it. *Id.* at 604. The plaintiff responded with evidence that months before his fall, there had been flooring in the area near the shower stall that needed repair and, in fact, the floor had been patched. *Id.* at 605. The trial court denied summary judgment; however, on appeal the appellate court found that there was no inference of negligence and that the plaintiff had failed to meet his burden of

coming forward with evidence sufficient to show that a material question of fact existed with regard to the condition of the floor that day. *Id*.

Similarly, in *Wright Corp. v. Quack*, 526 N.E.2d 216 (Ind. Ct. App. 1988), a beauty college patron slipped, fell, and fractured her hip, but she did not know what caused her fall. All she ever saw was a beauty school student mopping up the blood from where she had fallen. *Id*. at 216. At trial, plaintiff presented evidence that beauty school students would occasionally have spray bottle water fights and that hair and water would sometimes accumulate near work stations, and the jury found in her favor. *Id*. On appeal, the jury verdict was overturned and judgment was ordered entered in favor of the beauty school. *Id*. at 218. Plaintiff's evidence was found to be too speculative to support an inference of negligence where there was no evidence that such a dangerous condition existed on the floor day of the plaintiff's fall. *Id.*

The Court finds *Schultz*, *Wright Corp.*, and *Scott County Family YMCA* to be on point and persuasive authority in this context. As in those cases, there is no evidence that Kroger had any reason to know there was moisture on the floor, if in fact such moisture existed. As the Court held in *Scott County Family YMCA*, "negligence cannot be established by inferential speculation alone." 817 N.E.2d at 605. For these reasons, the Court finds that Ms. Jewell has failed to designate sufficient evidence to create an issue of material fact on Kroger's notice of the alleged dangerous condition. Therefore, the Court concludes that Kroger is entitled to summary judgment.

## V.
### CONCLUSION

Sometimes an accident occurs without assignable negligence. *Indiana Union Traction Co. v. Long,* 96. N.E. 604 (Ind. 1911). Although Ms. Jewell has barely presented sufficient

evidence to create an issue of material fact regarding the presence of a dangerous condition at the Kroger store, she has not presented sufficient evidence to create an issue of material fact with regard to Kroger's knowledge of that condition. Accordingly, Kroger's Motion for Summary Judgment is **GRANTED**. [Dkt. 19.] Judgment shall issue accordingly by separate entry.

06/26/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distributed Electronically Via CM/ECF:**

Donald B. Kite Sr.
GONZALEZ SAGGIO & HARLAN LLP
don_kite@gshllp.com

Larry W. Pleasants
LARRY PLEASANTS, PROFESSIONAL
CORPORATION, ATTORNEY
lwpleasants@sbcglobal.net